UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PABLO NIEVES
TELANA NIEVES,

                              Plaintiffs,

                                                                        DECISION AND ORDER

                                                                        08-CV-6537L

                              v.

THE CITY OF ROCHESTER,
THE ROCHESTER FIRE DEPARTMENT,
FLOYD A. MADISON, (Former) Chief of
the Rochester Fire Department,
JOHN CAUFIELD, (Current) Chief,
RALPH PRIVITERE, Executive Deputy
Chief of the Rochester Fire Department, in their
indiv idual and official capacities, and other
known or unknown members of the City of Rochester,

                                    Defendants.
_____

       Plaintiff, Pablo Nieves ("Nieves") and his wife commenced this action against the City of Rochester (the "City"), the Rochester Fire Department ("RFD"), its former Chief Floyd A. Madison, current Chief John D. Caufield, and Executive Deputy Chief, Ralph Privitere (collectively, "defendants"). Nieves alleges that he was subjected to a hostile work environment, harassment and disparate treatment in violation of his civil rights pursuant to 42 U.S.C. § 1983, and purports to assert state law claims for negligent and intentional infliction of emotional distress, and negligent hiring, training supervision and retention..

       Defendants now move to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) and (c). For the reasons set forth below, that motion (Dkt. #8) is granted, and the complaint is dismissed.

DISCUSSION

According to the complaint, Nieves, a City firefighter, was "singled out for unequal treatment" by the defendants based upon, inter alia, his race. (Dkt. #12-2 at ¶12). Stated summarily, Nieves claims that he was denied certain training and transfers, subjected to unfair medical certification requirements and disclosures of medical information, and that the defendants permitted other officers to harass him during and after Nieves was accused, tried and acquitted of rape charges. Nieves contends that the defendants' acts and omissions were motivated by race-based discriminatory animus.

The defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) and (c). The applicable standard for determining motions to dismiss requires Nieves to set forth sufficient facts to render each of his claims plausible on their face. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqubal,* ____ U.S. ____, 129 S. Ct. 1937, 1949 (2009).

**I.   Individual Capacity Claims Against the Individual Defendants**

Nieves lists Floyd Madison, John Caufield and Ralph Privitere as defendants: however, the complaint contains no factual allegations and asserts no claims concerning them. The only factual allegations made against Chief Privitere and Chief Caufield are that Privitere received a transfer request from Nieves on one occasion, and that Caufield communicated with Nieves' counselor and ordered Nieves to comply with the terms of his collective bargaining agreement and undergo an independent medical examination. Plaintiff makes several allegations concerning the final individual defendant, Chief Madison, relating to Madison's alleged failure to provide plaintiff with certain training and/or a transfer, and ordering him to attend an independent medical examination.

In order to hold the individual defendants personally liable for a constitutional violation pursuant to Section 1983, Nieves must allege facts establishing that each defendant was personally involved in the constitutional deprivation, as well facts sufficient to state a claim for that deprivation. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) ("in this

Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983") (internal quotation marks omitted).

Initially, other than generally referring to an unspecified denial of due process, Nieves does not identify the nature of the alleged constitutional deprivation to which he was subjected, or the right that was allegedly violated. Furthermore, Nieves makes no allegation, nor can one be read into the complaint, that any of the individual defendants acted personally to violate his constitutional rights, or that they did so with an impermissible motive. His claims against the individual defendants in their individual capacities are therefore dismissed.

## II.     Official Capacity Clams Against Individual Defendants

Nieves asserts claims against Caufield, Privitere and Madison in both their individual and official capacities, and requests awards of punitive damages against them. To the extent that his claims pertain to official capacity, they are treated as claims against the municipality – the City of Rochester. *See Coon v. Town of Springfield*, 404 F.3d 683 , 687 (2d Cir. 2005), *citing Brandon v. Holt*, 469 U.S. 464, 471-73 (1985).

## III.    Claims Against the RFD

It is well settled that under New York law, departments that are mere arms of a municipality are not independently subject to suit, apart from the municipality. *See Santiago v. City of New York,* 2008 U.S. Dist. LEXIS 56205 at 6 (S.D.N.Y. 2008); *S.W. by J.W.. v. Warren*, 528 F. Supp. 2d 282, 302 (S.D.N.Y. 2007). As plaintiff concedes in his complaint, the RFD is mandated and maintained by the City of Rochester. (Dkt. #12-2 at 3). Thus, it is merely an administrative arm of the City, and not subject to a separate suit. Nieves' claims against the RFD are therefore dismissed.

## IV.    Negligent Infliction of Emotional Distress

In New York, Workers' Compensation Law provides the exclusive remedy for negligence claims against an employer. *See* N.Y. Workers' Comp. Law §29(6); *Gabel v. Richards Spears Kibbe & Orbe, LLP*, 615 F. Sup. 2d 241, 243 (S.D.N.Y. 2009). Rochester City Charter §8B-5 provides coverage for firefighter injuries incurred in the line of duty. Defendants contend that Section 8B-5

is substantially similar to N.Y. General Municipal Law §207-c, which has been held to provide the exclusive remedy and bar negligence suits against a municipality. *See e.g.*, *Brady v. New Rochelle*, 296 A.D.2d 365 (2d Dept. 2002).

In the alternative, defendants argue that Nieves has failed to allege facts sufficient to state a claim under the applicable "direct duty" theory, because he has not alleged facts that could support any finding that defendants breached a direct duty to Nieves, or subjected him to an unreasonable risk of bodily injury or death. *See Dollman v. Mast Indus.*, 731 F. Supp. 2d 328, 340-341 (S.D.N.Y. 2010) (noting that claims for negligent infliction of emotional distress under New York Law may arise under either the "bystander theory," the "direct duty" theory, or in certain other circumstances certain to produce mental distress, such as being falsely told that a family member has been killed).

Initially, analysis of whether Nieves' claim is precluded by the Rochester City Charter is unnecessary, because Nieves has failed to allege that he suffered any serious physical injury or threat to his physical safety due to a breach of a direct duty by defendants.

In order to state a claim under the only theory that could conceivably apply here – the "direct duty" theory – a plaintiff must plausibly allege "the defendant's breach of a direct duty owed to the plaintiff which unreasonably endangered his or her own physical safety." *Danielak v. City of New York*, 2005 U.S. Dist. LEXIS 40901 at *56 (E.D.N.Y. 2005), *citing Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Nieves' emotional distress claims appear to be based on his factual allegations that flyers he posted in fire stations were defaced in unspecified ways by persons unknown, that a flyer was circulated by unknown firefighters concerning rape charges against Nieves, that an anonymous advertisement was published in a local newspaper condemning Nieves for the alleged rape, and that a retired firefighter warned him that he should "watch his back" for firefighters who had taken sides against him in the trial of the rape case. Nieves does not allege that any of these activities "unreasonably endangered his . . . physical safety," nor does the complaint contain any allegation that Nieves' physical safety was specifically threatened at any time. *Danielak v. City of New York*, 2005 U.S. Dist. LEXIS 40901 at *56. Nor does Nieves claim that the City or

the RFD had any involvement in, or knowledge of, any of the allegedly threatening activities, specify the particular duty of protection owed to him by defendants, explain how it arose, or identify the manner in which it was breached. As such, Nieves has failed to state a claim for negligent infliction of emotional distress. *See Jones v. McMahon*, 2005 U.S. Dist. LEXIS 42291 at *20-*21 (N.D.N.Y. 2005).

V. **Intentional Infliction of Emotional Distress**

In order to state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Brewer v. Brewer*, 34 Fed. Appx. 28, 30 (2d Cir. 2002). With respect to the first element, the conduct in question must be so outrageous in character and extreme in degree as to be regarded as "atrocious, and utterly intolerable in a civilized community." *Deal v. Seneca County*, 2008 U.S. Dist. LEXIS 37846 at *25 (W.D.N.Y. 2008).

There are a number of mortal deficiencies in Nieves' intentional infliction of emotional distress claims. Initially, the claim is untimely: the pertinent factual allegations appear to describe conduct occurring no later than 2006, far outside of the applicable one-year statute of limitations extending back from the Complaint's November 26, 2008 filing date. *See* N.Y. C.P.L.R. §215(3).

Furthermore, Nieves' complaint falls far short of alleging the requisite extreme or outrageous conduct. Rather, his complaint describes, at worst, individualized harassment by some fellow firefighters who believed that Nieves had been wrongly acquitted of rape charges and Nieves alleges no factual basis for attributing any such conduct to his employer.

Finally, it is well settled that a plaintiff is foreclosed from recovering damages from a municipal defendant on a claim of intentional infliction of emotional distress. Because all of Nieves' claims against the RFD and the individual defendants are dismissed, leaving the City as the sole defendant for his intentional infliction of emotional distress claim, that claim is dismissed. *See*

*Rafter v. Bank of Am.*, 2009 U.S. Dist. LEXIS 21542 at *28 (S.D.N.Y. 2009); *Lauer v. City of New York*, 240 A.D.2d 543 (2d Dept. 1997).

### VI. Derivative Claims by Telena Nieves

The only claim asserted on behalf of Nieves' wife is a derivative claim based upon his alleged emotional distress and/or economic damages. She alleges no facts in support of that claim, and accordingly, it is dismissed.

### VII. Negligent Hiring, Training, Supervision and Retention

Nieves also asserts a New York state common law claim for negligence in the hiring, training, supervision and retention of employees. Liability on such claims typically arises only where an employee has engaged in conduct *outside* the scope of his employment, such that the employer could not otherwise be held vicariously liable, and liability is instead premised upon the employer's failure to act on a known risk concerning conduct outside of an employee's duties. *See Marotta v. Palm Mgmt. Corp.,* 2009 U.S. Dist. LEXIS 15476 at *11-*12 (S.D.N.Y. 2009) ("liability for negligent hiring, retention, training or supervision typically arises only when an employee acts outside of the scope of his employment and vicarious liability cannot obtain . . . [f]or example, the employer could be held liable if it had knowledge of an employee's violent propensities and did not take steps to prevent those propensities from harming the public"); *LaFontaine v. City of New York*, 2009 U.S. Dist. LEXIS 105838 at *34 (S.D.N.Y. 2009) ("[u]nder New York law, employees' actions within the scope of their employment do not subject their employers to liability for negligent hiring, training, supervision or retention").

Nieves alleges no facts concerning actions committed by policymakers or by employees acting outside of their normal duties: he merely alleges that they performed those duties negligently. *See e.g.*, *Marotta.,* 2009 U.S. Dist. LEXIS 15476 at *12 (dismissing negligent infliction of emotional distress claim where plaintiff alleges only that defendants were negligent in the performance of their normal duties). Furthermore, Nieves does not specify the factual particulars of his claim: he does not allege that the defendants were at any time aware of any particular threat posed to Nieves by any

of his coworkers, that they failed to train employees in some relevant matter, or that any employee's alleged conduct occurred in line with a municipal policy. Accordingly, his negligent hiring, training, supervision and retention claims are dismissed.

**VIII.   Section 1983 Claims: Disparate Treatment, Hostile Work Environment, Harassment**

In order to state a claim under Section 1983, "a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under the color of law." *Greenwich Citizens Comm., Inc. V. Counties of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 29030 (2d Cir. 1996). Initially, Nieves makes no claim that any municipal custom or policy existed which resulted in a violation of the Constitution or other federal laws, or allege sufficient facts to support such an inference. *See e.g.*, *Kern v. City of Rochester*, 93 F.3d 38, 44 (1996); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Even if Nieves had so alleged, he has failed to sufficiently allege that his rights under federal law were violated. In order to state a *prima facie* case of employment discrimination, a plaintiff must allege: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). To allege a hostile work environment claim, Nieves must allege facts indicating that his workplace was permeated with "discriminatory intimidation, ridicule, and insult... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to the employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003).

Initially, Nieves does not claim that he is a member of any protected group, and his discrimination claims therefore fail because he has not alleged any protected status. To the extent

that Nieves' allegations that "his race" was the cause of his being "singled out for [unspecified] unequal treatment" and his reference to performing at a local Hispanic Heritage Month celebration could be loosely read to satisfy that element, Nieves does not allege facts sufficient to suggest discriminatory circumstances or a hostile work environment.  (Dkt. #12-2 at ¶12).

Again, Nieves alleges that he was denied permission by the RFD to attend certain training programs and/or ride-alongs, that his fire investigation certification was investigated, two transfer requests were denied, Nieves was suspended with pay during the investigation of a rape charge, that flyers were circulated by RFD personnel concerning the rape charges, an advertisement was placed by persons unknown in the local newspaper condemning Nieves, and finally, that the RFD required him to complete certain medical certifications during a disability leave.  Nieves does not allege that any of these acts, or failures to act, were motivated by his race, nor does he allege that any similarly-situated persons of other races were treated differently.  To the contrary, the only motivation Nieves attributes to the alleged "harassment" by other firefighters is that they believed Nieves was guilty of the rape accusation.  (Dkt. #12-2 at ¶¶26-28).

Indeed, the only conceivable factual allegation relating to race is the quote, attributed to a former RFD chief during a lunchtime conversation, that "[w]e don't like our people of color making a lot of noise in this department."  (Dkt. #12-2 at ¶12).  Standing alone, and with no additional information concerning its context, the person(s) to whom it was made, and its relationship, if any, to Nieves' background, this statement is insufficient to satisfy Nieves' obligation to allege factual circumstances giving rise to an inference of discrimination, let alone circumstances rising to the level of a hostile work environment.  Simply put, Nieves alleges insufficient facts to support his contention that any of the defendants' conduct was motivated by his race or ethnic background.  His discrimination claims are dismissed.

## CONCLUSION

Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) and (c) (Dkt. #8) is granted, and the complaint is hereby dismissed. Plaintiffs' cross-motion for attorneys fees (Dkt. #13) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 10, 2011.